# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Regina M. Rodriguez

Civil Action No. 1:24-cv-00913-RMR

GAYS AGAINST GROOMERS, a nonprofit corporation;
ROCKY MOUNTAIN WOMEN'S NETWORK, an unincorporated association;
RICH GUGGENHEIM, an individual; and
CHRISTINA GOEKE, an individual,

    Plaintiffs,

v.

LORENA GARCIA, in her individual and official capacities as a Colorado State Representative;
MIKE WEISSMAN, in his individual and official capacities as a Colorado State Representative and Chair of the House Judiciary Committee;
LESLIE HEROD, in her individual and official capacities as a Colorado State Representative;
JULIE GONZALES, in her individual and official capacities as a Colorado State Senator and Chair of the Senate Judiciary Committee; and
DAFNA MICHAELSON JENET, in her individual and official capacities as a Colorado State Senator,

    Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), ECF No. 19. The Motion is fully briefed and ripe for review. For the reasons set forth below, the Motion is GRANTED.

## I.  BACKGROUND[1]

Plaintiffs are two organizations and two individuals who "reject transgender ideology" and the related concepts of "misgendering" and "deadnaming."[2] ECF No. 1 ¶¶ 4-7. Plaintiffs bring this action under 42 U.S.C. § 1983 against Defendants Lorena Garcia, Mike Weissman, Leslie Herod, Julie Gonzales, and Dafna Michaelson Jenet in their individual and official capacities as members of the Colorado General Assembly. *Id.* ¶¶ 8-12. Plaintiffs assert that Defendants – chairs of the Colorado House and Judiciary Committee, a member of the House Judiciary Committee, and the House prime sponsor and Senate prime sponsor of House Bill ("HB") 24-1071 – collectively deprived Plaintiffs of their First Amendment rights during public testimony sessions of the committee hearings regarding HB 24-1071 before both the Colorado House and Senate Judiciary Committees.

HB 24-1071 expanded the conditions upon which a person with a prior felony conviction could obtain a legal name change. *Id.* ¶ 27. Specifically, the Bill Summary states that a person convicted of a felony "must show good cause to be able to change the person's name to a name different from the name the person was convicted under." *Id.* ¶ 28. "The bill states that good cause includes changing the petitioner's name to conform with the petitioner's identity." *Id.* HB 24-1071's sponsors and supporters also

---

[1] The facts are drawn from the allegations in Plaintiffs' Amended Complaint, which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

[2] Plaintiffs' complaint defines "misgendering" is "the act of referring to others, usually through pronouns or form of address, in a way that does not reflect their self-perceived gender identity;" and "deadnaming" as "the act of referring to a transgender person by a name they used prior to 'transitioning,' such as their birth name;" the Plaintiffs consider rejection or exclusion of these acts "to be a form of lying.'" ECF No. 1 ¶¶ 34-36.

2

refer to it as "Tiara's law." *Id.* ¶ 30. Tiara is the preferred name of Duane Antonio Kelley, a biological male with criminal convictions who has advocated for a change in the law to allow him to legally change his name to Tiara. *Id.* ¶ 31.

Plaintiffs Rich Guggeinheim and Christina Goeke (members of Plaintiffs Gays Against Groomers ("GAG") and Rocky Mountain Women's Network ("RMWN"), respectively), opposed the adoption of HB 24-1071 "because they believe it will make it easier for transgender individuals to conceal criminal convictions and thus pose a danger to children, women, and vulnerable populations. They also disagree with the concepts of 'misgendering' or 'deadnaming.' " *Id.* ¶ 33. To express their opposition to HB 24-1071, Guggeinheim and Goeke, both as individuals and as members of GAG and RMWN, respectively, signed up to testify on HB 24-1071 before the House Judiciary Committee and Senate Judiciary Committee. *Id.* ¶¶ 36-38, 52. The stated purpose of the public comment sessions is to provide citizens "with an opportunity to provide public comment on pending legislation in the form of testimony at a committee hearing." *Id.* ¶ 17.

The Colorado General Assembly publishes a Memorandum that provides the administrative rules for members of the public who wish to speak before legislative committees. *Id.* ¶ 21. One of these rules is that the "chair has the discretion and authority to limit testimony, ask the sergeant-at-arms to remove a disruptive person from the committee room, and clear the public from any hearing in the event of a disturbance that is disruptive to legislative proceedings." *Id.* ¶ 22. The Colorado House and Colorado Senate each publish their own guides to public hearings, which also establish administrative rules prohibiting disruptive behavior. *Id.* ¶¶ 25-26.

3

On January 30, 2024, the House Judiciary Committee heard public testimony on HB 24-1071. *Id.* ¶ 39. During the session, guidelines were established that requested that participants "engage in respectful discourse and share their perspectives and opinions on this bill" by not using derogatory language, misgendering a witness, or using a witness's deadname. *Id.* ¶ 40. Upon hearing these rules, Guggenheim left his place in line and did not testify because he felt he could not deliver his views if he could not use "derogatory" language. *Id.* ¶ 42. Goeke began giving her testimony but was interrupted for violating these rules and allegedly using "derogatory" and "disparaging" language about witnesses. *Id.* ¶ 43-44. Goeke was urged to abide by the rules, but she refused to comply. *Id.* Her testimony was stopped when the committee went into recess. *Id.* ¶ 45. Goeke alleges that her speaking time was prematurely terminated and that, after expressing her frustration, she was asked to leave by the sergeant at arms. *Id.* ¶ 46-47.

On March 27, 2024, the Senate Judiciary Committee held a hearing on HB 24-1071. *Id.* ¶ 52. At the opening of public comment, witnesses were instructed to treat others with dignity and respect. *Id.* ¶ 53. If they did not do so, they would be removed. *Id.* Specifically, witnesses were instructed not to use derogatory language, misgender, deadname, or otherwise disparage those present. *Id.* ¶ 54. Goeke spoke in opposition to the bill and repeatedly attempted to refer to "Tiara" as "Mr. Duane Powell." *Id.* ¶ 56. As a result, she was interrupted and reminded that she could not "deadname" or "misgender." *Id.* ¶ 57. Her testimony was cut short when she again referred to Tiara as "Mr. Duane Powell." *Id.* ¶ 58. Further, portions of Goeke's speech wherein she used this derogatory language were erased from the official audio record of the Senate Judiciary Committee

4

hearing. *Id.* ¶ 59. Guggenheim also spoke in opposition to the bill and was interrupted when he proceeded to "deadname" and "misgender" people. *Id.* ¶ 60. He was invited to proceed with his comments in accordance with these rules. *Id.* But Guggenheim would not abide by the rules, and as a result he was not allowed to complete his testimony. *Id.*

Plaintiffs filed this lawsuit on April 4, 2024. ECF No. 1. Plaintiffs assert an ongoing deprivation of their rights under the First and Fourteenth Amendment for which they are entitled under 42 U.S.C. § 1983 to declaratory and injunctive relief, together with nominal damages, costs, and attorneys' fees. Defendants move to dismiss all claims, asserting absolute legislative immunity. ECF No. 19. Defendants also argue for dismissal on the basis that Plaintiffs have not alleged a sufficient factual basis to support a claim for deprivation of their First Amendment rights and because Plaintiffs' claims are moot. *Id.*

## II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted). As a result, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal quotation omitted)).

### III.  ANALYSIS

#### A.  Legislative Immunity

Defendants argue that they are entitled to legislative immunity on all claims against them. *See* ECF No. 19 at 3. Plaintiffs respond that legislative immunity does not apply to the official capacity claims and even if it did, Defendants are not entitled to legislative immunity on any of Plaintiffs' claims. ECF No. 23 at 3-4.

##### 1.  Availability of Legislative Immunity for Official Capacity Claims

The Court first addresses Plaintiffs' argument that legislative immunity does not apply to their official capacity claims, which requires the Court to consider the interplay between sovereign immunity—specifically, the *Ex parte Young* exception to sovereign immunity—and legislative immunity.

6

Sovereign immunity is grounded in the Eleventh Amendment, which grants states sovereign immunity from suit. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021); U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). This immunity extends "to suits brought by citizens against their own state." *Hendrickson*, 992 F.3d at 965. And it applies not just to suits brought against states themselves but also to "suit[s] against a state official in his or her official capacity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "But *Ex parte Young* created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law." *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (citing *Ex parte Young*, 209 U.S. at 159–60, 28 S.Ct. 441).

*Ex parte Young* allows plaintiffs to sue state officials even if the officials claim to be acting under valid state law because, if the officials' conduct constitutes an ongoing violation of federal law, the state "cannot cloak their actions with state authority or state immunity." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 609 (10th Cir. 1998). That is, when state officials are arguably violating federal law, "[t]he state is not the real party in interest because the state cannot 'authorize' the officials to violate federal law." *Id.* at 610. Thus, in allegedly violating federal law, the officials are stripped of their state authority and the Eleventh Amendment will not protect them from suit. *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 976 (10th Cir. 2001); *see also Idaho v.*

*Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 264, 117 S. Ct. 2028, 2043, 138 L. Ed. 2d 438 (1997) (O'Connor, J., concurring) ("The [*Ex parte*] *Young* doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity.").

Plaintiffs contend that the *Ex parte Young* exception applies to their official capacity claims. To determine if the *Ex parte Young* exception applies, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Thus, "plaintiffs must show that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that their allegations are sufficient to fall within the *Ex parte Young* exception.[3] Accordingly, Plaintiffs' official capacity claims are not barred by sovereign immunity.

But Defendants do not assert sovereign immunity; they assert legislative immunity, a completely distinct doctrine. And Plaintiffs' argument that legislative immunity cannot apply to the official capacity claims is mistaken. Plaintiffs incorrectly argue that their "official capacity claims in this case are really claims against the General Assembly and

---

[3] At this stage of the jurisdictional analysis, the Court "should not analyze the merits of the claim." *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (internal quotations and citation omitted).

its committees, which may not rely on a personal defense, such as legislative immunity." ECF No. 23 at 3-4. But as explained above, for *Ex parte Young* to apply, the claims must be against the "state officials rather than the state." *Pruitt*, 669 F.3d 1167 (emphasis added). Accordingly, because Plaintiffs' official capacity claims are really claims against the officials and not the state, it follows that they may not assert state sovereign immunity but may assert the personal defense of legislative immunity. Plaintiffs have not cited any case finding that *Ex parte Young* overcomes legislative immunity. And cases from around the country have reached the opposite conclusion. *See, e.g.*, *Tolman v. Finneran*, 171 F. Supp. 2d 31, 37–38 (D. Mass. 2001) ("Short of the exceptional case, it is unlikely that *Ex Parte Young* is broad enough to abrogate legislative immunity and authorize suit against a legislator acting in a purely legislative capacity."); *Chase v. Senate of Virginia*, 539 F. Supp. 3d 562, 569 (E.D. Va. 2021) (even if *Ex parte Young* exception applied, defendant "would also be protected by absolute legislative immunity.") *Scott v. Taylor*, 405 F.3d 1251, 1257 (11th Cir. 2005) (state legislators who acted in their legislative capacities "are entitled to absolute legislative immunity . . . regardless of whether a suit seeks damages or prospective relief and regardless of whether the state legislators are named in their individual or official capacity."). Therefore, if Defendants were acting in their legislative capacity, they are entitled to legislative immunity, regardless of whether the claims are asserted against them in their individual or official capacities.

### 2. Whether Defendants Are Entitled to Legislative Immunity

"It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*,

9

523 U.S. 44, 46, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This absolute legislative immunity also applies to suits brought pursuant to § 1983, even where the remedy sought is declaratory or injunctive relief. *Id*. at 48-49, 118 S.Ct. 966; *see also Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *Supreme Court of Virginia v. Consumers Union of the U.S.*, 446 U.S. 719, 732, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Legislative immunity exists to "enable[] officials to serve the public without fear of personal liability. Not only may the risk of liability deter an official from proper action, but the litigation itself 'creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks to defend the litigation.'" *Sable v. Myers*, 563 F.3d 1120, 1123-24 (10th Cir. 2009) (quoting *Supreme Court of Virginia v. Consumers Union of the U.S.*, 446 U.S. at 733). Accordingly, state legislators, such as Defendants here, enjoy absolute immunity for their "legitimate legislative activity." *Tenney*, 341 U.S. at 376.

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. at 54. The "legislative sphere" reaches things "generally done in a session of the [legislature] by one of its members in relation to the business before it." *Gravel*, 408 U.S. at 623–24, 92 S.Ct. 2614 (quotation omitted). Signing an ordinance into law is "quintessentially legislative," *Bogan*, 523 U.S. at 55, but the definition is broader and covers other aspects of the legislative process, including a legislative committee's "deliberative and communicative processes." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503-04 (1975); *see also National Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 630 (9th Cir. 1995) (absolute immunity covers "not only speech and debate per se, but also voting, ... circulation of

10

information to other legislators, ... participation in the work of legislative committees, ... and a host of kindred activities.") (citations omitted). The Tenth Circuit has identified acts within the legislative sphere as "legislative speech and debate, voting, preparing committee reports, <u>conducting committee hearings</u>, and other integral steps in the legislative process." *See Kamplain*, 159 F.3d 1248, 1251 (10th Cir. 1998) (emphasis added). The inquiry does not extend to the legislators' purpose in performing the act, because "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377.

Here, the acts alleged by Plaintiffs occurred in the context of two formal legislative committee meetings. See ECF No. 1 at ¶ 39-64. Defendants contend that their acts are therefore "wholly within the sphere of legitimate legislative activity." ECF No. 19 at 7. In response, Plaintiffs argue that Defendant's actions with respect to the enforcement of their speech restrictions were executive actions, distinct from legislating. ECF No. 23 at 4. Thus, the question is before the Court is "whether, stripped of all considerations of intent and motive, [Defendants'] actions were legislative." *Bogan*, 523 U.S. at 55. That is—do Defendants' acts of enforcing decorum rules and restrictions against Plaintiffs during public testimony on pending legislation fall within the legislative sphere?

Neither the Tenth Circuit nor the Supreme Court has squarely addressed this issue. In *Kamplain*, cited by both parties, the Tenth Circuit considered whether local government officials were entitled to legislative immunity for their decision to prohibit plaintiff from speaking before or participating in any future board of commissioner meetings. 159 F.3d 1248. The board's decision came two weeks after plaintiff protested

the board's award of a bid to a competitor of his employer and was ejected from that meeting. *Id*. The Tenth Circuit began its legislative immunity analysis by explicitly noting that the "issue here is not the Board's ejection of Plaintiff from the public meeting but its vote to ban Plaintiff from all future Commission meetings and its subsequent decision to prohibit Plaintiff from participating in or speaking before the Board at Curry County Commission meetings." *Id*. at 1252. The Tenth Circuit held that the board's decisions to ban the plaintiff and its subsequent decision to prohibit his participation or speech at future county commission meetings were not legislative "[b]ecause the circumstances of this case did not concern the enactment or promulgation of public policy," and thus were not "related to any legislation or legislative function." *Id*. In reaching this conclusion, the Tenth Circuit reasoned that even though the Board was acting during a regularly scheduled meeting, "the Board members were not voting on, speaking on, or investigating a legislative issue." *Id.* Thus, the acts were of an administrative nature. *Id.* But *Kamplain* is distinguishable.

Here, unlike in *Kamplain*, Defendants' acts occurred in the context of two formal legislative committee meetings convened exclusively for the purpose of obtaining public comment on a specific piece of pending legislation. As stated in Plaintiffs' complaint, [t]he Colorado General Assembly provides citizens with an opportunity to provide public comment on pending legislation in the form of testimony at a committee hearing." ECF No. 1 ¶ 17. "In Colorado, every bill receives a public hearing by one of the legislature's committees. At a legislative committee hearing, citizens have an opportunity to express their views and have them incorporated into the official legislative record." *Id.* A

12

Memorandum from the Colorado Legislative Council Staff regarding public participation in the legislative process states that "[t]he purpose of a committee hearing is to gather information so that the committee can make an informed recommendation on a given bill or resolution. <u>Public input is an important part of this process</u>." ECF No. 1-1 (emphasis added).

Under the circumstances of this case, the Court finds that Defendants' alleged acts were related to Defendants' legislative function of overseeing public testimony on pending legislation and gathering relevant information and input from the public. These are "integral steps in the legislative process." *Bogan*, 523 U.S. at 55; *see also Timmon v. Wood,* 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008) ("Public comment is a useful way for a legislative body to gather necessary information to address the priorities of its constituents, and public comment has become a routine and legitimate part of modern-day legislative process."). Defendants' alleged acts were specifically related to public comment on HB 24-2071 and were therefore "done 'in relation to the business before' the legislative body." *Kamplain*, 159 F.3d at 1251 (quoting *Powell v. McCormack*, 395 U.S. 486, 502 (1969)). During their public testimony on the HB 24-2071, Defendants repeatedly warned Plaintiffs to abide by the decorum rules and keep testimony to the bill. *See* ECF No. 1 ¶ 44. For example, Defendant Weissman told Goeke "I am going to urge you to keep your testimony please to the bill, do not get into individual personalities." *Id.* By limiting Plaintiffs' testimony on pending legislation only when it violated decorum rules and was not focused on the bill at issue, Defendants were acting in their legislative capacity to establish a legislative record and gather information regarding the bill. *See*

13

*Timmon v. Wood*, 633 F. Supp. 2d at 461 (local legislators entitled to legislative immunity when they cut plaintiff's comments short and directed her to speak only on relevant matters because legislators' role in gathering information during public comment period was "an integral part of the Council's gathering of information necessary to effect wise and effective legislation."). And because the published audio is simply a reflection of the hearing, the publishing of such audio is likewise a reflection of Defendants' acts within the legislative sphere. Thus, the Court concludes that Defendants' acts are within the sphere of legitimate legislative activity and Defendants are entitled to legislative immunity from Plaintiffs' claims against them.

### B. Mootness

Additionally, even if legislative immunity did not bar Plaintiffs' claims, the Court would find Plaintiffs' claims for prospective relief moot.

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Defs. of Wildlife v. Everson*, 984 F.3d 918, 944–45 (10th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1). Article III is the basis for the mootness doctrine, which "provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (citation omitted). Thus, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (cleaned up).

The court must decide whether a case is moot as to "each form of relief sought." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (explaining the plaintiff's "burden to demonstrate standing for each form of relief sought . . . exists at all times throughout the litigation.") (quotations omitted). "Thus, interim developments that moot a claim for prospective relief do not necessarily moot a claim for damages." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019). And "[t]he mootness of a plaintiff's claim for injunctive relief is not necessarily dispositive regarding the mootness of his claim for a declaratory judgment." *Jordan v. Sosa*, 654 F.3d at 1025.

Here, Plaintiffs seek an order enjoining Defendants from enforcing their decorum standards and similar speech restrictions during public testimony at legislative committee hearings and from censoring Plaintiffs' right to speak and petition by editing speech from the public record of those hearings, as well as declaratory relief consistent with the injunction. See ECF No. 1 at 28-29. Defendants contend all of Plaintiffs' claims for relief are moot. ECF No. 19 at 9-12. Plaintiffs argue their claims are not moot because "the Court can meaningfully protect Plaintiffs' right to speak by granting injunctive and declaratory relief against Defendants' speech restrictions; as well as providing nominal damages for past censorship." ECF No. 23 at 13. Having considered each form of relief sought, the Court finds that Plaintiffs' claims for injunctive and declaratory relief are moot.[4]

"Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014).

---

[4] Plaintiffs' claims' claims for nominal damages are not moot. *See Uzuegbunam v. Preczewski,* 592 U.S. 279 (2021) (a claim for nominal damages can save a case from mootness because any amount of money—no matter how trivial—"can redress a past injury."). However, because all claims are dismissed on legislative immunity grounds, the Court does not address the claim for nominal damages any further.

Thus, "[w]here a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' " *Jordan v. Sosa*, 654 F.3d at 1024 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-95 (1974)). "Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations 'take[ ] [it] into the area of speculation and conjecture.' " *Id.* (quoting *O'Shea*, 414 U.S. at 497).

Even if a claim for injunctive relief is moot, that does not necessarily mean the claim for declaratory judgment is moot. *See id.* at 1025. Where a plaintiff seeks both an injunction and declaratory relief, "the District Court ha[s] '[a] duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of [an] injunction.' " *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121 (1974) (*quoting Zwickler v. Koota*, 389 U.S. 241, 254 (1967)). A plaintiff cannot maintain a declaratory action "unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991). Otherwise, a declaratory judgment could be an improper advisory opinion. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 212–13, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (holding that in order to avoid advisory opinions, a court may not hear a case if the underlying dispute loses its character as a present, live controversy). "It is well established that what makes a declaratory judgment action 'a proper judicial resolution of a 'case or controversy' rather than an advisory opinion is the settling of some

dispute which affects the behavior of the defendant toward the plaintiff.' " *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (alteration omitted)). "The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (quotation omitted).

In this case, Plaintiffs' claims for both injunctive relief and declaratory judgment are moot. It is undisputed that the legislation at issue, HB 24-1071, has been passed and signed into law by the Governor, and the General Assembly is no longer in session.[5] According to Plaintiffs' allegations, the challenged decorum rules and restrictions were announced specifically for the two committee hearings on HB 24-1071. *See* ECF No. 1 ¶¶ 40, 41, 53-55. Plaintiffs have not pointed to any "continuing, present adverse effects" beyond speculation that there will potentially be future bills that implicate transgender concerns, that Plaintiffs will likely want to testify on these potential bills, and that the same decorum rules and restrictions may be put in place for any public testimony hearings on these potential bills. Given this level of speculation, the Court finds that Plaintiffs' "continued susceptibility to injury" is far from "reasonably certain" and Plaintiffs' claims for injunctive relief are therefore moot. *Jordan v. Sosa*, 654 F.3d at 1024.

The same is true with respect to Plaintiffs' claims for declaratory relief. Because of the level of speculation involved, the Court cannot presently craft a declaratory judgment

---

[5] "That the courts are allowed to take judicial notice of statutes is unquestionable." *United States v. Coffman*, 638 F.2d 192, 194 (10th Cir.1980).

that would have any known "effect on the real world." *Citizens for Responsible Gov't State Political Action Comm*, 236 F.3d 1174, 1182 (10th Cir. 2000) (quotation omitted). Crucially, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Jordan v. Sosa*, 654 F.3d at 1025 (citing *Rhodes v. Stewart,* 488 U.S. 1, 4 (1988) (per curiam)); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.") (emphasis added)).

Here, it is entirely speculative—if not unlikely—that the same Defendants would oversee the public testimony hearings of any potential bills on which Plaintiffs may wish to testify. These legislators may not be re-elected, may not be chairs or members of the relevant committees, and/or may not sponsor any potential bills implicating Plaintiffs' concerns. In other words, the Defendants are not "actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights." *Jordan v. Sosa*, 654 F.3d at 1026. Accordingly, the Court finds that Plaintiffs' requested declaratory relief would be nothing more than an advisory opinion and the claims for declaratory relief are therefore moot. *See id.* ("If the plaintiff has not named such individuals or entities, courts are likely to determine that they cannot accord the plaintiff effective declaratory relief and that the action is moot.").[6] For these reasons, Plaintiffs' claims for injunctive and declaratory relief are moot.

---

[6] In their motion, Defendants suggest that Plaintiffs' argument against mootness may hinge on the "capable of repetition yet evading review" mootness doctrine. *See* ECF No. 19 at 9-10. Defendants contend that even if Plaintiffs asserted this exception, it would not apply. *Id*. However, Plaintiffs do not address this argument in their response or otherwise assert that this exception applies. Thus, Plaintiffs have waived this

## IV.     CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss, ECF No. 19, is GRANTED. All claims are DISMISSED WITH PREJUDICE. Accordingly, Plaintiffs' Motion for Preliminary Injunction, ECF No. 8, and Plaintiffs' Motion for Order to Suspend RMR Civil Practice Standards, ECF No. 15, are DENIED AS MOOT.

DATED: November 27, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

---

argument. *See Jiying Wei v. Univ. of Wyoming Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 739 (10th Cir. 2019) (arguments not raised in response to 12(b)(6) motion are waived). And in any case, having failed to address the argument, Plaintiffs have not met their burden of establishing that the exception applies. *Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1215 (10th Cir. 2015) ("[T]he plaintiff bears the burden of establishing the issue is a wrong capable of repetition yet evading review.")).